IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES MORGAN,

    Plaintiff

v.

ADVANCE SURFACES
CORPORATION, INC.,

    Defendant.

CIVIL ACTION NO.
1:14-CV-3784-CAP-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant Advance Surfaces Corporation, Inc.'s ("Defendant" or the "Company") Motion to Stay Proceedings and to Compel Arbitration ("Motion to Compel Arbitration").  (Docket Entry [2]).  For the reasons outlined below, Defendant's Motion to Compel Arbitration should be **GRANTED** and the proceedings should be **STAYED**  pending binding arbitration on all of the claims in this action.  (Docket Entry [2]).

## BACKGROUND

Plaintiff James Morgan ("Plaintiff") filed the instant action against Defendant on November 24, 2014.  (Compl., Docket Entry [l]).  In his Complaint, Plaintiff asserts that he began employment with Defendant, a flooring company, in September 2009.

(Compl., ¶¶ 17-19).   Plaintiff worked as a floor installer, operating on floors and assisting workers with other projects.  (Compl., ¶¶ 19-20).  Defendant divided its floor installers between two main working areas: flooring areas and mixing stations.  (Compl., ¶ 21).   According to Plaintiff, at the mixing station, workers were required to mix hazardous chemicals and were exposed to dangerous fumes and vapors; it was considered the least desirable work.  (Compl., ¶¶ 23-24).

Plaintiff contends that from the inception of his employment, Defendant was on notice that he had severe asthma.  (Compl. ¶¶ 18, 25).  Around November 2009, while working at a mixing station, Plaintiff alleges he suffered a sever asthma attack, which was witnessed by his supervisor, who then drove him to the emergency room.  (Compl., ¶¶ 26-27).  Following this incident, and upon his doctor's recommendation, Plaintiff requested that he not be required work at the mixing station; Plaintiff's supervisor advised him that as an accommodation of his asthma, Plaintiff would not have to, and the supervisor separately informed Plaintiff's co-workers not to put Plaintiff at the mixing station due to his asthma.  (Compl., ¶¶ 28-30).

Despite being accommodated in this fashion for a number of months, Plaintiff alleges he was required by a new supervisor to work at the mixing station in April 2011.

2

(Compl., ¶¶ 31-34).  Plaintiff continued to suffer from asthma attacks on the job.[1] (Compl., ¶ 35).  Nevertheless, Plaintiff was required to intermittently work at the mixing station for the rest of his employment with Defendant.  (Compl., ¶¶ 34, 36).  While working at the mixing station in November 2012, Plaintiff had an extreme asthma attack; he stopped breathing, almost died, and was left in the hospital unconscious for multiple days.  (Compl., ¶¶ 37-40).

Following the November 2012 asthma attack, a human resources representative for Defendant, Tracy Woods, allegedly told Plaintiff that he could not return to work without a doctor's release; however, Plaintiff contends that another supervisor demanded he return to work for a project in South Carolina despite his asthma problems.  (Compl., ¶¶ 41-43).  Plaintiff returned for the project – and apparently to work generally with Defendant – but asked that he not be forced to work at the mixing station as an accommodation.  (Compl., ¶¶ 44-47).  Plaintiff's request was allegedly denied, even as Ms. Woods continued to request a doctor's release.  (Compl., ¶¶ 44-47).

Plaintiff, who is African American, alleges that in addition to refusing his request

---

[1] Plaintiff attests separately in a declaration filed in opposition to the Motion to Compel Arbitration that as a result of his asthma attacks during his employment with Defendant, he had to be rushed to the emergency room approximately twenty-six times.  (Declaration of James Morgan ("Morgan Dec."), Docket Entry [4-1], ¶ 3).

3

for accommodation, Defendant regularly allowed white employees to work solely in the flooring area, and not at the mixing station. (Compl., ¶¶ 18, 47). Furthermore, when Plaintiff asked to utilize leave under the Family and Medical Leave Act to seek treatment for and improve his medical condition, Defendant refused to process his paperwork, telling Plaintiff he was ineligible for family and medical leave. (Compl., ¶¶ 48-49). Defendant terminated Plaintiff's employment soon thereafter, in January 2013, and did not provide any severance pay or other support to Plaintiff. (Compl., ¶¶ 50-51).

Based upon these allegations, Plaintiff contends that Defendant violated the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq., ("ADA"), when Defendant failed to provide a reasonable accommodation of his asthma disability and when Defendant retaliated against him for asserting his rights under the statute; discriminated against him on the basis of his race in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., ("Title VII"); and interfered with his rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., ("FMLA").

## **AGREEMENT TO ARBITRATE**

According to Tracy Wood, the human resources representative discussed in the Complaint, Plaintiff signed an Assigned Employee Notice and Acknowledgments (the

4

"Agreement") in September 2012, a few months before suffering his extreme asthma attack.  (See Affidavit of Tracy Woods ("Woods Aff."), attached as Ex. A to Docket Entry [3-2], ¶¶ 2-3).  The Agreement addresses a number of subjects, including:

- prohibiting modification of the Agreement;

- explaining that payment services for Plaintiff would be provided by a third-party payment processor, SOI;

- explaining anti-discrimination, anti-harassment, anti-retaliation, and reporting policies and requirements;

- agreeing to arbitration of disputes related to Plaintiff's employment (the Arbitration Provision");

- acknowledging that Plaintiff had access to the SOI employee handbook (the "Handbook"), that it did not constitute a contract for employment, and that the policies in it may be changed by SOI (in total, the "Handbook Provision"); and

- agreeing to injury and post-accident drug and alcohol testing.

(Agreement, attached as Ex. 1 to Woods Aff.).

The Arbitration Provision of the Agreement provides:

5

I and SOI agree that any legal dispute involving SOI, Company,[2] or any benefit plan, insurer, employee, officer, or director of SOI or Company (all of which are beneficiaries of this agreement to arbitrate and waiver of jury trial) arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment will be resolved exclusively through binding arbitration before a neutral arbitrator in the capital or largest city of the state in which I work or another mutually agreed location . . . Arbitration will use the rules of a neutral, mutually agreeable arbitration service, may grant the same remedies that would be available in a court of law (and no more) . . . and use the same rules of evidence as a federal court. Unless prohibited by law costs of arbitration will be shared equally by the parties. If applicable law requires provisions in an arbitration agreement which are not included here or are different from what is included here, they will be deemed incorporated . . . . If for any reason a matter is not resolved through arbitration, I AND SOI MUTUALLY WAIVE ANY RIGHT TO A JURY TRIAL. . . . My agreements to arbitrate and waive jury trials are contracts under the Federal Arbitration Act and any other laws validating such agreements and waivers.

Plaintiff explains that Ms. Wood initially presented the Agreement to him during the summer of 2012, and that he refused to sign it at that time. (Morgan Dec., ¶¶ 7-8). Plaintiff alleges he was told by someone[3] that the Agreement was intended to demonstrate that Plaintiff was a part-time employee, in order to avoid paying any unemployment insurance benefits. (Morgan Dec., ¶ 10). In September 2012, Ms. Wood

---

[2] The parties do not dispute that "Company" in the Agreement refers to Defendant.

[3] Plaintiff does not explain who told him this, but does not suggest that it was a Company representative or person with direct knowledge.

6

again presented Plaintiff with the Agreement, which he then signed.  (Morgan Dec., ¶ 9; Woods Aff., ¶ 2-3).  Plaintiff does not suggest or argue he was forced, threatened, or otherwise coerced into signing the Agreement.

Plaintiff further states that during his employment with Defendant, he earned approximately twelve dollars per hour; that since his termination, he has accrued significant debt and been unable to find employment or income; and that he currently resides in South Carolina with his daughter and son-in-law, who support him financially. (Morgan Dec., ¶¶ 4-5).

## LEGAL ANALYSIS OF MOTION TO COMPEL ARBITRATION

Defendant argues this action should be arbitrated based upon the Arbitration Provision in the Agreement executed by Plaintiff during his employment with Defendant.  (Docket Entry [3]).  Plaintiff opposes Defendant's Motion to Compel Arbitration on the grounds that the Agreement – along with the included Arbitration Provision – does not constitute an enforceable agreement to arbitrate.  (Docket Entry [4]).  In particular, Plaintiff contends that (1) the Agreement is not a valid contract or agreement to arbitrate because (a) it is illusory, lacks consideration, and is an unconscionable contract of adhesion, and is therefore unenforceable, and (b) the Arbitration Provision was not initialed by SOI, Defendant, or Plaintiff as required by

7

Georgia law; (2) the Arbitration Provision is unenforceable because it (a) limits Plaintiff's rights and remedies under Title VII and the FMLA, (b) denies Plaintiff a right to a jury trial, and (c) the costs of arbitration will unduly burden Plaintiff's ability to see recovery; and (3) Defendant should provide discovery regarding the Agreement and the costs associated with arbitrating this dispute. (Id., pp. 6-19).

## I.    **Federal Arbitration Act**

The Federal Arbitration Act, 9 U.S.C. ¶ 1 et seq. ("FAA"), was enacted in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991) (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-220, and n.6 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510, n.4 (1974)). Section 2 of the FAA, in particular, has been recognized as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Section 2 provides that a "written [arbitration] provision in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such

8

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Further, Section 3 of the FAA, 9 U.S.C. § 1 et seq., provides:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The Supreme Court has stated that once a party "ha[s] made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  Gilmer, 500 U.S. at 26.  Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (1) the plaintiff entered into a written agreement to arbitrate that is enforceable "under ordinary state-law" contract principles and (2) the claims before the court fall within the scope of that arbitration agreement.  See 9 U.S.C. §§ 2-4; Lambert v. Austin Indus., 544 F.3d 1192, 1195 (11th Cir. 2008).

Under the first prong,[4] a court must be "satisfied that the making of the agreement

_____

[4] The parties do not dispute, as to the second prong, that the claims asserted in the action under the ADA, Title VII, and FMLA fall within the scope of the Arbitration Provision.

for arbitration . . . is not in issue." 9 U.S.C. § 4.  "It is, therefore, rudimentary that 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.'" Wheat, First Secs. Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).  Notwithstanding the strong federal policy favoring arbitration, "parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson- Humphrey Co., 957 F. 2d 851, 854 (11th Cir. 1992) (citing Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 478 (1989); Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419 (11th Cir. 1990) (per curiam)); see also Wheat, First Secs., Inc., 993 F.2d at 817.

## II.   **Validity of the Agreement and Arbitration Provision**

In determining whether a binding, enforceable agreement to arbitrate exists between the parties, courts generally apply state contract law. Douglas v. Johnson Real Estate Investors, LLC, 470 F. App'x 823, 823 (11th Cir. 2012); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367-68 (11th Cir. 2005).  Along these lines, in examining whether there is an enforceable agreement to arbitrate under state law, considerations include whether there has been an offer and acceptance, consideration, as well as contract defenses, such as fraud, duress, or unconscionability. Lambert, 544

F.3d at 1195-96; <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1219 (11th Cir. 2007). The strong federal policy favoring arbitration, however, is also taken into consideration even in the application of state law. <u>Caley</u>, 428 F.3d at 1368.

In addition, in <u>Prima Paint Corp. v. Flood & Conklin Manufacturing Co.</u>, the Supreme Court ruled that arbitration clauses were separable from the contracts in which they were included. 388 U.S. 395, 402-04 (1967). In this regard, the Eleventh Circuit has explained that "'under normal circumstances,' when there is an arbitration clause in a signed contract, 'the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general.'" <u>John B. Goodman Ltd. P'ship v. THF Constr., Inc.</u>, 321 F.3d 1094, 1096 (11th Cir. 2003) (per curiam) (quoting <u>Chastain</u>, 957 F.2d at 854. Given the separability of arbitration agreements from the underlying contract and the presumptive validity of the former, if a dispute arises about the validity of the contract, as opposed to the arbitration clause itself, "it is for the arbitrat[or], not the district court, to determine whether the underlying contracts in general are enforceable under" state law. <u>John B. Goodman</u>, 321 F.3d at 1095.

## A.    The Arbitration Provision is Enforceable Under State Law

As noted above, attacking the validity of the Arbitration Provision under state law

principles, Plaintiff first contends that promises contained in the Agreement are illusory (and the Arbitration Provision unenforceable) because the Agreement includes language allowing SOI to "alter, discontinue, and interpret the Handbook at any time without giving [Plaintiff] notice or an opportunity to object."  (Docket Entry [4], pp. 8-9).  Unfortunately, Plaintiff's argument fails for multiple reasons.  In the first instance, Plaintiff misconstrues the language of the Agreement contained in the Handbook Provision.[5]  The relevant language about alteration, discontinuation, and interpretation relates solely to the Handbook, not to the Agreement or the Arbitration Provision, and is simply part of a general acknowledgment by Plaintiff that (1) the policies contained in the Handbook were not part any contract with Plaintiff and (2) those policies, which are not part of any contract, could be changed.  (See Agreement, ¶ 5).[6]  The Agreement

_____

[5] The language block-quoted by Plaintiff in his brief is made up of portions of three separate paragraphs of the Agreement (out of nine total), even though Plaintiff cites only to a single paragraph.  (See Docket Entry [4], pp. 8-9).  The first quoted paragraph, the Agreement's first, makes clear that the Agreement may not be modified.  The second quoted paragraph, the Agreement's fourth (and also the Arbitration Provision), merely provides in part that only counsel for SOI may waive the agreement to arbitrate on behalf of SOI, and does not speak to waiver by Plaintiff or Defendant.  The third quoted paragraph, the Agreement's fifth, is the only language allowing anyone to alter, discontinue, or interpret anything at all – and applies only to the Handbook's policies, not to the Agreement itself.  (See Agreement, ¶¶ 1, 4, 5).

[6] The entirety of the relevant language is as follows: "I have received or been given access to the SOI Assigned Employee Handbook.  Neither this Acknowledgment

makes clear that it – the contract executed by Plaintiff, containing the Arbitration Provision – cannot be modified.  (See Agreement, ¶ 1).  As a result, Plaintiff's contention that the promises contained in the Agreement and/or the Arbitration Provision are illusory because they can be altered is inaccurate in light of the plain language of the Agreement.

Moreover, Plaintiff's legal argument and citations ignore the separability of clauses agreeing to arbitrate discussed above.  As previously addressed, with regard to "gateway issues" of enforceability, the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally.  Prima Paint, 388 U.S. at 404; see also Goodman, 321 F.3d at 1095-96.  Even if the Agreement were part of a larger contract between Plaintiff and Defendant that included the Handbook – which would go against the plain language of the Agreement – the paragraph providing for modification of the Handbook does not implicate the Arbitration Provision, which is Plaintiff and Defendant's agreement to arbitrate, and should not be considered by the Court.

The cases relied on by Plaintiff do not persuade this court otherwise.  It is true

nor the Handbook is a contract of my employment; my relationship with SOI is at will. SOI can alter, discontinue, and interpret the Handbook at any time without notice or consideration."  (Agreement, ¶ 5).

that those case generally stand for the proposition that, in the employment context, an agreement to arbitrate is not enforceable if the arbitration clause itself may be modified unilaterally by one party.  See Dumais v. American Golf Corp., 299 F.3d 1216 (10th Cir. 2002); Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315-16 (6th Cir. 2000); Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999).  However, in each of those cases – none of which are based upon Eleventh Circuit authority or Georgia contract law – the separability question of Prima Paint was never implicated, because it was the arbitration clause itself – not the underlying contract or portions of the contract – that was attacked.

In Dumais, the plaintiff's employment contract contained both an arbitration clause and a clause the court interpreted as permitting the employer to make unilateral changes to any of the terms of the employment contract, including the arbitration clause. 299 F.3d at 1218.  The Agreement in this case does not allow the terms of the Arbitration Provision to be modified, but instead only those policies contained in the Handbook (which are expressly not part of the Agreement).  Likewise, in Floss, the plaintiff challenged a stand-alone arbitration agreement that she was required, as a condition of her employment, to enter into with a third-party arbitration service. 211 F.3d at 309-10.  That arbitration agreement gave the third-party arbitration service "the

14

unlimited right to modify the rules without the employee's consent." Id. at 310. It was precisely because the agreement to arbitrate itself contained the unilateral modification term that the separability issue was not implicated. Finally, the Hooters plaintiffs argued that the employer's purportedly reciprocal promises to arbitrate disputes were, in fact, illusory because the employer had the right to unilaterally change the terms of the arbitration clause. 173 F.3d at 940 (The arbitration "rules provide that upon 30 days notice Hooters, but not the employee, may cancel the agreement to arbitrate. Moreover, Hooters reserves the right to modify the rules . . . whenever it wishes and without notice to the employee."). Again, there is no language allowing Defendant to modify or alter the Arbitration Provision in this case. The Prima Paint question – is the Arbitration Provision enforceable separately from the other provisions of the Agreement – simply did not come up in Dumais, Hooters, and Gibson because the arbitration clauses in those cases were themselves subject to unilateral modification.

Additionally, Georgia courts[7] have held that even if arbitration clauses may by their own terms be modified or terminated by one party unilaterally, the promises contained in the arbitration clause are not illusory. See Caley v. Gulfstream Aerospace

---

[7] Notably, Plaintiff does not cite to any Georgia state or federal case law on the question of whether the promises contained in the Agreement and Arbitration Provision are illusory.

Corp., ("Caley I"), 333 F. Supp. 2d 1367, 1377 (N.D. Ga. 2004) (rejecting argument that agreement to arbitrate employment disputes was illusory because employer "retain[ed] the right to modify or terminate the [arbitration agreement] upon thirty days notice"), aff'd, 428 F.3d 1359 (11th Cir. 2005) (citing Rushing, 256 Ga. App. 115, 567 S.E.2d 384 (2002)).  Thus, even if the Company could modify the Arbitration Provision, which it cannot, it does not become illusory for that reason.  Accordingly, for all the reasons set forth above, the promises contained in the Agreement and Arbitration Provision are not illusory.

Next, Plaintiff contends that no consideration was provided for the Agreement (and/or the Arbitration Provision) because it "states that SOI can 'discontinue' the Handbook 'at any time without notice or consideration.'" (Docket Entry [4], pp. 9-10). Just as Plaintiff misconstrued the Agreement's language in arguing that the Agreement is illusory based upon the Handbook Provision, Plaintiff's argument for lack of consideration again misconstrues the Agreement's plain language. The quoted language of the Handbook Provision, allowing the discontinuation of the Handbook without notice or consideration, does not speak to the Agreement, much less the Arbitration Provision, or the consideration provided therein (i.e. the mutual promises to arbitrate disputes related to employment), and Plaintiff never addresses whether or how

16

consideration was lacking for Plaintiff's agreement to arbitrate contained in the Arbitration Provision.[8]   Moreover, Plaintiff's argument that the Arbitration Provision "lacks bargained-for consideration because . . . Defendant['s] . . . retain[s] the right to modify or terminate the" Arbitration Provision is "foreclosed by Rushing v. Gold Kist, Inc.," in which the Georgia Court of Appeals "held that sufficient consideration existed to support an arbitration agreement which the offeror had proffered without input from the other party and which allowed the offeror to modify the disputes subject to arbitration under the agreement." Caley I, 333 F. Supp. 2d at 1377, aff'd, 428 F.3d 1359 (citing Rushing, 256 Ga. App. at 118, 567 S.E.2d at 388-89).[9]   Thus, even if the

---

[8] Plaintiff's argument regarding lack of consideration is rather unclear. Plaintiff cites generally to provisions of the Georgia Code requiring that consideration exist for the creation of a valid contract and that the consideration be bargained for, but Plaintiff does not address how consideration is lacking in the present case. (See Docket Entry [4], p. 9 (citing O.C.G.A. §§ 13-3-40 ("consideration is essential to a contract which the law will enforce") and 13-3-42 ("To constitute consideration, a performance or a return promise must be bargained for by the parties to a contract."))). Plaintiff also cites to a single case in support of his lack-of-consideration argument that merely states that a promise that is entirely optional is illusory; it does not otherwise relate to issues of consideration. (See Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc., 215 Ga. App. 194, 198, 450 S.E.2d 427, 431 (1994) (quoting Restatement, Second, Contracts, § 2, Comment (e)). It appears that Plaintiff's lack-of-consideration arguments are merely another iteration of his prior argument that the Agreement is illusory.

[9] Though Plaintiff does not challenge the Arbitration Provision on the basis of mutuality of consideration between Plaintiff and Defendant specifically (given that the Arbitration Provision states "I and SOI agree," rather than "I and Company agree"),

Arbitration Provision could be modified, which by the Agreement's terms, it cannot, there was sufficient consideration, because the parties would still be bound by Arbitration Provisions (possibly modified) terms.  See Caley v. Gulfstream Aerospace Corp., ("Caley II"), 428 F.3d 1359, 1376-77 (11th Cir. 2005) (citing Rushing, 256 Ga. App. At 118, 567 S.E.2d at 388-89; Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 174-75 (5th Cir. 2004); and Blair v. Scott Specialty Gases, 283 F.3d 595, 604 (3d Cir. 2002))

Finally, the Agreement and Arbitration Provision are not unenforceable as an unconscionable contract of adhesion.  Plaintiff argues the Agreement is procedurally unconscionable because Plaintiff had insufficient bargaining power to negotiate the

---

Defendant as a third party beneficiary may invoke its terms.  Lankford v. Orkin Exterminating Co., 266 Ga. App. 228, 229, 597 S.E.2d 470, 473 (2004) (stating with regard to an arbitration clause, "[t]he general law provides that a beneficiary need not be specifically named in a contract, so long as the contract shows that it was intended for the third-party's benefit") (citing  Northen v. Tobin, 262 Ga.App. 339, 344, 585 S.E.2d 681 (2003)); see also Stone v. Penn. Merch. Grp., Ltd., 949 F. Supp. 316, 320 (E.D. Pa. 1996) ("It is well established in the federal courts that an arbitration agreement may be enforced by or against a nonsignatory party under traditional principles of agency or contract law.") (citing cases from the First, Second, Third, Eighth, and Ninth Circuits).  The Arbitration Provision clearly identifies Defendant as a beneficiary to the agreement to arbitrate.  (Agreement, ¶ 4 (agreeing that Defendant, along with employees, officers, and directors of Defendant, among others, are "all [] beneficiaries of this agreement to arbitrate")).

terms of the Agreement with Defendant.[10]  To determine procedural unconscionability, Georgia courts evaluate the following factors:  "age, education, intelligence, business acumen and experience of parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice."  NEC Techs., Inc. v. Nelson, 267 Ga. 390, 478 S.E.2d 769, 771-72 (1996).  However, "[m]ere inequity in bargaining power is not a sufficient reason to hold that arbitration agreements are unenforceable," in the employment context, when "terms are clear" and "not oppressive," even if the agreement is offered on a take-or-leave it basis.  Caley II, 428 F.3d at 1377-78 (internal quotation marks omitted) (citing Gilmer, 500 U.S. at 32-33; Saturna v. Bickley Constr. Co., 252 Ga. App. 140, 141, 555 S.E.2d 825, 827 (2001); and Oblix, Inc. v. Winiecki, 374 F.3d 488, 490 (7th Cir. 2004)).  In this case, Plaintiff points only to unequal bargaining power of the parties to negotiate the terms of the straightforward, one-page

---

[10] Plaintiff also states in passing that the Agreement's terms are substantively unconscionable in the section arguing that it unenforceable based upon Georgia law, but never explains how.  "Under Georgia law, a [substantively] unconscionable contract is 'such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of.'"  Caley II, 428 F.3d at 1378 (quoting Hall v. Fruehauf Corp., 179 Ga. App. 362, 363, 346 S.E.2d 582, 583 (1986)). Plaintiff points to no portion of the Agreement or Arbitration Provision that offends this standard.

Agreement.  (Docket Entry [4], pp. 9-10).  Because this inequity of bargaining power is Plaintiff's only showing of unconscionability, Plaintiff's argument fails.  Caley II, 428 F.3d at 1377-78.

### B.    The Parties Did Not Need to Initial the Arbitration Provision

Plaintiff also contends that Section 9-9-2(c)(9) of the Georgia Code requires that, to be enforceable, arbitration provisions in contracts relating to employment must be "'initialed by all signatories at the time of the execution of the agreement.'" (Docket Entry [4], pp. 11-12 (quoting O.C.G.A. § 9-9-2(c)(9)).  Plaintiff, however, misconstrues the relationship between the Georgia Arbitration Code, O.C.G.A. § 9-9-1, et seq. ("GAC") and the FAA.  The United States and Georgia Supreme Courts have recognized that given the FAA's stated liberal policy in favor of enforcing agreements to arbitrate, many procedural limitations placed upon the enforceability of such agreements by state law are preempted.[11]  See Southland Corp. v. Keating, 465 U.S. 1, 11 (1984) (finding "nothing in the [FAA] indicating that the broad principle of enforceability is subject to any additional limitations under state law"); DiMambro-Northend Assoc. v. Blanck-Alvarez, 251 Ga. 704, 707, 309 S.E.2d 364

---

[11] Unlike some substantive issues such as offer and acceptance for consideration. See Lambert, 544 F.3d at 1195-96

(1983) (stating that the FAA represented "declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any . . . procedural policies to the contrary") (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 1). The Eleventh Circuit has concluded that not even signatures are required to satisfy the enforceability requirements of the FAA, and that state laws to the contrary are preempted. Cagle II, 428 F.3d at 1368-69 (holding that while the FAA requires that an agree to arbitrate be in writing, there is no requirement that they even be signed, much less initialed). Although the Arbitration Provision could be unenforceable if it were governed by the GAC, even Georgia courts have held that "the state law and policy with respect to the [initial] requirement must yield to the paramount federal law," when the parties' agreement to arbitrate includes a provision stating it is governed by the FAA. Primerica Fin. Servs., Inc. v. Wise, 217 Ga. App. 36, 41, 456 S.E.2d 631, 635 (1995) (analyzing the preemption of O.C.G.A. § 9-9-2(c)(9)'s initial requirements by the FAA in employment context) (quoting CCC Builders v. City Council of Augusta, 237 Ga. 589, 592, 229 S.E.2d 349, 352 (1976) (internal quotations and bracketing omitted)).[12] Accordingly,

---

[12] The Primerica court noted on reconsideration that based upon the United States Supreme Court's decision in Volt, if the parties to an agreement to arbitrate expressly agreed that the provision would be governed by the GAC rather than the FAA, then Section 9-9-2(c)(9)'s initial requirement might not be preempted, but specificallt avoided reaching that issue. Primerica, 217 Ga. App. at 41, 456 S.E.2d at

21

because the Arbitration Provision specifically states that it is governed by the FAA,[13] Section 9-9-2(c)(9)'s initial requirement is preempted. <u>Primerica</u>, 217 Ga. App. at 41, 456 S.E.2d at 635; <u>see also</u> <u>Washburn v. Beverly Enters.-Ga., Inc.</u>, No. CV 106 051, 2006 WL 3404804, at *3 (S.D. Ga. Nov. 14, 2006) (noting that the FAA preempts other of Section 9-9-2's limitations on the enforceability of agreements to arbitrate)). Thus, any lack of initials is irrelevant to the enforceability the of the Arbitration Provision.

Based upon the foregoing, the Agreement and Arbitration Provision are not unenforceable under Georgia law.

## III. The Agreement and Arbitration Provision Do Not Unreasonably Limit Plaintiff's Rights and Remedies

Separately from his arguments based upon Georgia law, Plaintiff argues the Arbitration Provision is unenforceable because it limits Plaintiff's rights and remedies under Title VII and the FMLA. Specifically, Plaintiff contends that the Arbitration Provision (a) "severs Title VII's [and the FMLA's] fee shifting provision for attorney

---

636 (citing <u>Volt</u> 489 U.S.at 472). The Court was clear, however, that when an arbitration provision states it is governed by the FAA, then Section 9-9-2(c)(9)'s requirements are preempted. <u>Primerica</u>, 217 Ga. App. at 41, 456 S.E.2d at 635.

[13] The Arbitration Provision states that the "agreements to arbitrate and waive jury trials are contracts under the Federal Arbitration Act . . . ." (Agreement, ¶ 4). There is no reference to the GAC.

AO 72A
(Rev.8/82)

fees," (b) eliminates Plaintiff's "right to trial," and (c) would work an "undue financial burden and hardship on Plaintiff."  (Docket Entry [4], pp. 13-17).

## A.    Attorney Fees are Available under the Arbitration Provision

With regard to the issue of attorney fees, it is true that in order for an arbitration clause to be enforceable it must permit relief equivalent to court remedies.  Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1062 (11th Cir. 1998).  Plaintiff admits, however, that the Agreement, and more specifically the Arbitration Provision, are "silent as to the shifting of attorneys' fees."  (Docket Entry [4], p. 14).  More importantly, though, Plaintiff completely fails to mention that the Arbitration Provision expressly provides that "[a]rbitration will use the rules of a neutral, mutually agreeable arbitration service, may grant the same remedies that would be available in a court of law . . . and use the same rules of evidence as a federal court."  (Agreement, ¶ 4) (emphasis added)).  Thus, the Arbitration Provision by its own terms expressly grants Plaintiff the same remedies available under Title VII and the FMLA, including attorney fees.  "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  See Mitsubishi, 473 U.S. at 627-28 ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral

23

forum, the statute will continue to serve both its remedial and deterrent function."); see also Gilmer, 500 U.S. at 26 (quoting Mitsubishi).   Accordingly, the Arbitration Provision is not unenforceable for this reason.

### B.    Waiver of Trial

Plaintiff's next argument – that the Arbitration Provision's waiver of a right to a jury trial invalids the Provision – is simply incorrect.[14]   "'[T]he Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case *once it is determined that the litigation should proceed before a court*.  If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes."   Caley II, 428 F.3d at 1371 (emphasis in original) (quoting Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 711 (5th Cir. 2002) and citing cases for the same proposition from the Third, Fourth, and Seventh Circuits).   Accordingly, Plaintiff's waiver of a jury trial does not invalidate the Arbitration Provision.

### C.    Burdens and Costs Associated with Arbitration

Finally, with regard to the costs and burdens of arbitration, the Supreme Court has recognized that "large arbitration costs could preclude a litigant . . . from effectively

---

[14] Plaintiff provides no statutory or case law in support of this proposition, and simply makes vague reference to "fundamental right[s]" provided under the United States Constitution.  (Docket Entry [4], p. 15).

vindicating her federal statutory rights in the arbitral forum," and has acknowledged that an arbitration provision may be invalidated on such grounds. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000); see also In re Checking Account Overdraft Litig., 754 F.3d 1290, 1293 (11th Cir. 2014) (recognizing that the trial court "found the arbitration provision was substantively unconscionable because . . . the potentially high costs of arbitration would discourage individual actions."). When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such [prohibitive] costs." Randold, 531 U.S. at 92. "[A]bsent a record establishing that the plaintiff 'likely will incur prohibitive costs,' an agreement to arbitrate must be enforced." Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003) (quoting Bess v. Check Express, 294 F.3d 1298, 1304 (11th Cir .2002)).  The analysis of whether there is a record of prohibitive costs is performed on a case-by-case basis. Musnick, 325 F.3d at 1259.

In this case, Plaintiff has testified that he is severely in debt, has no income, is unable to work, and depends on others for financial support. (Morgan Dec. ¶¶ 2-6). Plaintiff's Counsel has sought information from Defense Counsel regarding the costs to be born by Plaintiff in arbitration, but purports to have received no response. (See

25

Docket Entries [4], pp. 17-18, and [4-2], pp. 1-2). Defendant, ignoring the factual question of arbitration costs and the burden on Plaintiff, responds that they are irrelevant and that the Arbitration Provision is still enforceable. (See Docket Entry [5], pp. 5-6). While the Court is sympathetic to Plaintiff's position, based upon the Arbitration Provision, Defendant is ultimately correct that the Arbitration Provision is enforceable, though not because the costs and burden are irrelevant.[15]

The Arbitration Provision provides that "[u]nless prohibited by law costs of arbitration will be shared equally by the parties." (Agreement, ¶ 4 (emphasis added)). Stated differently, if the division of arbitration costs is prohibited by law – for example, if they are "preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum," Randolph, 531 U.S. at 90 – those costs will not be divided equally between the parties. Thus, by the terms of the Arbitration Agreement itself, prohibitively burdensome costs may not be imposed upon Plaintiff.

Moreover, if Plaintiff "believes that [the costs of arbitration are ultimately] excessive or that [they] deprive[] him of his statutory remedy, he may seek judicial review" of the arbitration award and costs. Musnick, 325 F.3d at 1261 (citing First

---

[15] Defendant is correct despite failing to acknowledge, much less cite, any of the relevant case law.

Options of Chicago, Inc. v. Kaplan, 514 U.S. 938) (arbitration awards may be vacated if they are in "disregard of the law") and Koveleskie v SBC Capital Mkts., Inc., 167 F.3d 361, 366 (7th Cir. 1999) ("[J]udicial review of arbitration awards is sufficient to protect statutory rights")).  "At that point, the district court may make an informed judgment on whether the Agreement deprived him of a statutory remedy by conditioning the exercise of his statutory right on the payment of excessive costs."  Musnick, 325 F.3d at 1261 (citing DeGaetano v. Smith Barney, Inc., 983 F.Supp. 459, 461 (S.D.N.Y. 1997) (sending claim to arbitration, but subsequently vacating arbitrator's denial of fees after DeGaetano provided specific evidence that she suffered too much of a transaction cost by substituting an arbitral forum for court)).  Accordingly, it is first in arbitration, and then by judicial review in this Court, that the Plaintiff would present his "'argument that the challenged provision on [costs] is unenforceable because it deprives [hi]m of a statutory right.'"  Musnick, 325 F.3d at 1261-62 (quoting Thompson v. Irwin Home Equity Corp., 300 F.3d 88 (1st Cir. 2002)).

For all the reasons stated above, Plaintiff's rights and remedies are not limited in a way that would render the Agreement and Arbitration Provision unenforceable.

## IV.    Discovery on Prohibitive Costs is Not Required

Relating to the last issue of possibly prohibitive costs, Plaintiff requests discovery regarding the Agreement and the costs and burden of arbitration.  While the Court may allow a record to be developed to determine the likelihood a party would accrue prohibitive costs if arbitration were compelled, no record need be developed when that likelihood is speculative.  Musnick, 325 F.3d at 1261.  Indeed, when an arbitration provision is not determinative regarding how fees will be allocated, the Eleventh Circuit has indicated that no non-speculative record can be made.  Id. (citing Blair v. Scott Speciality Gases, 283 F.3d 595, 610 (3d Cir. 2002)).  Because the Arbitration Provision prohibits the imposition of improperly burdensome or prohibitive costs on Plaintiff, any record would be speculative.  Based on the foregoing, Plaintiff's request for discovery relating to the costs and burden of arbitration is **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Arbitration and Stay Proceedings should be **GRANTED** and the proceedings should be **STAYED**  pending arbitration on all of his claims in this action.  (Docket Entry [3]).  As this is a Final Report and Recommendation and there are no other matters pending, the Clerk is **DIRECTED** to terminate the reference to the undersigned.

28

AO 72A
(Rev.8/82)

**SO REPORTED AND RECOMMENDED**, this ___13___ day of July, 2014.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES MORGAN

    Plaintiff,

v.

ADVANCE SURFACES
CORPORATION, INC.,

    Defendant.

CIVIL ACTION NO.
1:14-CV-3784-CAP-LTW

## **ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C.  Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation **within fourteen (14) days of the receipt of this Order**.  Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the

district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. <u>United States v. Slay</u>, 714 F.2d 1093 (11th Cir. 1983), <u>cert</u>. <u>denied</u>, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). A party failing to object to a magistrate judge's findings or recommendations contained in the report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. <u>Mitchell v. United States</u>, — F. App'x —, 2015 WL 2145573, at *3 (11th Cir. May 8, 2015); 11th Cir. R. 3-1. In the absence of a proper objection, however, the appeals court may review the matter on appeal for plain error if necessary in the interest of justice. <u>Mitchell</u>, 2015 WL 2145573, at *3; 11th Cir. R. 3-1.

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**SO ORDERED**, this  13    day of July, 2014.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE